IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEROME JUNIOR WASHINGTON, | ) | |
| | ) | Civil Action No. 22 – 1202 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | District Judge David S. Cercone |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| PSYCHIATRIST BRITTI and | ) | |
| ROBERT D. GILMORE, | ) | |
| Superintendent of SCI-Greene, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

For the following reasons, the Court will dismiss Plaintiff's Complaint (ECF No. 4) with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**A. Factual Allegations**

Plaintiff Jerome Junior Washington ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). He initiated this prisoner civil rights action by the filing of a Motion for Leave to Proceed *in forma pauperis* (ECF No. 1), which was granted on August 30, 2022 (ECF No. 3). Plaintiff has sued Robert Gilmore, the former Superintendent of SCI-Greene, and Ms. Britti, a psychiatrist at SCI-Greene. (ECF No. 4, ¶¶ 4-5.)

In his Complaint, Plaintiff alleges that he suffers from serious mental health issues and often hears voices inside his head telling him to kill himself and others. Id., ¶ 13. He states that he has continuously been put on and taken off "D Roster," which is a DOC mental health rating that identifies him as having a serious mental illness. Id., ¶ 14.

1

Plaintiff states that on December 13, 2018, he experienced what he refers to as a "mental health crisis" stemming from the death of his brother. Id., at ¶ 6. This led to an incident between Plaintiff and corrections officers that occurred when Plaintiff refused to get out of the shower, and it ultimately resulted in the use of force and OC spray. Id., ¶ 8. Plaintiff says that after the incident he was placed in a psychiatric observation cell ("POC") by Mr. Carino, a psychologist, but that Defendant Britti later removed him from the POC cell and put him on what he calls "accountability status."[1] Id., ¶¶ 7-9. Plaintiff claims that Defendant Britti exhibited deliberate indifference to his serious mental health and participated in the torture against him that day by removing him from the POC cell and placing him on accountability status for what he claims was "no reason." Id., ¶¶ 10-11.

Plaintiff states that a similar incident occurred where corrections officials used force and OC spray on him on January 11, 2019.[2] Id., ¶ 12. He claims that Defendant Britti was deliberately indifferent to his mental health needs on that day when she placed him on accountability status instead of in a POC cell. Id.

Plaintiff next refers to an incident that occurred on April 12, 2019, when he told Lt. Jellots that he was feeling suicidal and in response Lt. Jellots pulled Plaintiff out of his cell to speak to Defendant Britti. Id., ¶¶ 27-28. Defendant Britti informed Plaintiff that she was not going to place him in a POC cell but that she would instead order him Lithium. Id., ¶ 29. She then told Lt. Jellots to put Plaintiff back into his cell. Id., ¶ 30. Later that same day, Plaintiff again complained to Lt. Jellots that he was feeling suicidal, but Lt. Jellots told Plaintiff that Defendant Britti already told him that he could not go to a POC cell. Id., ¶¶ 31-32. Mr. Carino

---

[1] The events that occurred on December 13, 2018, are also the subject of Plaintiff's case at CA No. 19-1461 and CA No. 19-1462. While CA No. 19-1461 is still pending, Defendant Britti was not named as a defendant in that action.
[2] The events that occurred on January 11, 2019, are also the subject of Plaintiff's case at CA No. 19-1460 and CA No. 19-1462. While CA No. 19-1460 is still pending, Defendant Britti was not named as a defendant in that action.

told Plaintiff that he could not overrule Defendant Britti's decision.  Id., ¶ 32.  Plaintiff states that the next day, April 13, 2019, he informed the nurse passing out morning medication that he was suicidal.  Id., ¶ 34.  The nurse said "okay" and walked away, but Plaintiff states that per policy the nurse was supposed to stand at his door till a camera was present and Plaintiff could be seen by a psychiatrist.  Id.  Plaintiff states that he then tried to commit suicide and was pulled out of his cell on a stretcher and taken to a POC cell.  Id., ¶ 33.  However, he claims that no mental health care was offered to him, and he was later discharged and returned to his cell.  Id.  Plaintiff claims Defendant Britte was deliberately indifferent to his serious mental health needs because she failed to put him in a POC cell on April 12, 2019, which he claims lead to his suicide attempt the next day.[3]  Id., ¶ 34.

Plaintiff next refers to an incident that occurred on July 7, 2019, when he had asked Sgt. Imhoff if he could speak to a psychologist or psychiatrist because he was feeling suicidal.  Id., ¶ 23.  Sgt. Imhoff refused to help him and allegedly told Plaintiff to kill himself.  Id., ¶¶ 24-25.  Plaintiff states that the next day, July 8, 2019, he swallowed 100 or more Wellbutrin and other pills, sliced his wrist with a razor and then swallowed the razor.  Id., ¶ 23.  He states that he passed out from the overdose and was lying on the floor of his cell from 12:35pm to 1:00pm.[4]  Id., ¶ 26.

Plaintiff claims that Defendant Britti is aware of but deliberately indifferent to the fact that prisoners who have been diagnosed as having serious mental health issues are placed in SCI-Greene's DTU/SRTU for extended periods of time without adequate mental health treatment and that the conditions of their confinement exacerbate their mental illnesses and create a substantial

---

[3] The events that occurred on April 12-13, 2019, are also the subject of Plaintiff's case at CA No. 19-1462.
[4] The events that occurred on July 7-8, 2019, are also the subject of Plaintiff's case at CA No. 19-1462.

3

risk that their mental health will deteriorate.  Id., ¶¶ 35-36.  Plaintiff seeks compensatory, punitive, declaratory and injunctive relief in the form of better mental health care.  Id., ¶ 37.

## B. Standard of Review

When a plaintiff has requested leave to proceed *in forma pauperis*, district courts must review his allegations in accordance with 28 U.S.C. § 1915(e).  Section 1915(e)(2) requires federal courts to review complaints filed *in forma pauperis* and to dismiss, at any time, any action that: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[5]

When determining whether an action has failed to state a claim for purposes of § 1915(e)(2)(B)(ii), the Court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  D'Agostino v. CECOM RDEC, 436 F. App'x 70, 72 (3d Cir. 2011).  That means that the Court must dismiss a complaint if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing a plaintiff's complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff.  Twombly, 550 U.S. at 555-56; *see also* Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Factual allegations must be enough to raise a right to relief above a speculative level[.]"  Id. at

---

[5] Dismissal under § 1915(e)(2) is "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."  Neitzke v. Williams, 490 U.S. 319, 324 (1989).

555.  The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983."  Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

      Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  *See* Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

### C. Discussion

#### 1. Statute of Limitations

Congress has not established a time limitation for a § 1983 cause of action. Wilson v. Garcia, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in* Kasteleba v. Judge, 325 F. App'x 153, 156 (3d Cir. 2009). The United States Supreme Court has indicated, however, that courts are to consider § 1983 actions as tort actions and borrow the statute of limitations for state tort causes of action. Wilson, 471 U.S. at 278. In Pennsylvania, the statute of limitations for tort actions is two years. 42 Pa. Con. Stat. Ann. § 5524. Therefore, for § 1983 actions brought in Pennsylvania federal courts, the appropriate limitations period is two years. *See* Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

Federal law, however, governs when a § 1983 cause of action accrues; that is, when the statute of limitations begins to run. *See* Wallace v. Kato, 549 U.S. 384, 388 (2007). Under federal law, "'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998) (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)). "The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace, 549 U.S. at 391 (citations omitted).

"When screening a complaint under § 1915, a district court may sua sponte dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required." Whitenight v. Commonwealth of Pennsylvania State Police, 674 F. App'x 142, 144 (3d Cir. 2017) (citing cases); *see also* Smith v. Delaware County Court, 260 F. App'x 454, 455 (3d Cir. 2008).

Here, affording Plaintiff the most liberal construction of his *pro se* Complaint, his claims are time barred. The latest of the incidents described in Plaintiff's Complaint occurred on July 8, 2019, but Plaintiff did not file his Complaint in this case until August 11, 2022. As such, the Complaint appears to have been untimely filed beyond the applicable statute of limitations and will therefore be dismissed for Plaintiff's failure to state a claim upon which relief may be granted. *See* Jones v. Bock, 549 U.S. 199, 215 (2007) (If the allegations, taken as true, show that relief is barred by the applicable statute of limitations then a complaint is subject to dismissal for failure to state a claim).

### 2. **Personal Involvement**

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See*, *e.g.*, Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-established that, in the Third Circuit, personal involvement of defendants in alleged constitutional deprivations is a requirement in a section 1983 case and that a complaint must allege such personal involvement. *See* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the court stated in Rode,

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Id. (citations omitted). Courts routinely hold that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.

Plaintiff has failed to allege the personal involvement of Defendant Gilmore. With respect to Defendant Gilmore, Plaintiff alleges only that he is the Superintendent at SCI-Greene, and as such he is responsible for the overall operation of SCI-Greene. (ECF No. 4, ¶ 5.) However, he does not allege that Defendant Gilmore directed or participated in any of the alleged wrongdoing that forms the basis of his claims. For example, there are no pleaded facts to suggest that Defendant Gilmore knew of and disregarded any serious risk of harm to Plaintiff's mental health or made any treatment decisions regarding his care. Instead, it is quite clear that Plaintiff seeks to hold Defendant Gilmore liable based solely on the operation of *respondeat superior*, and for that reason alone he has failed to state a claim against him.

Additionally, Plaintiff has failed to allege the personal involvement of Defendant Britti in relation to the events that occurred on July 7-8, 2019. He does not plead any facts to suggest that she was even aware of the incident after it occurred, much less that she knew of and disregarded a substantial risk to Plaintiff's safety before it occurred. As such, he has failed to state a claim against her as it relates to her involvement in that incident.

### 3. Deliberate Indifference

Finally, Plaintiff fails to state a claim against Defendant Britti for a violation of his rights under the Eighth Amendment.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.

In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825,832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In a situation in which a prisoner alleges deliberate indifference to a medical need, a plaintiff must plead (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

With respect to the first prong, a medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzara, 834 F.2d 326, 347 (3d Cir. 1987).

With respect to the second prong, deliberate indifference is properly pleaded by factual allegations supporting the conclusion that the official knew of and disregarded an excessive risk to inmate safety. Farmer, 511 U.S. at 837. The official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must also "draw the inference." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The Third Circuit has held that this standard is met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks and citations omitted). This standard is also met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999).

It appears that Plaintiff seeks to hold Defendant Britti liable for her decision not to place him in a POC cell following the incidents on December 13, 2018, January 11, 2019, and April 12, 2019, claiming that in doing so she was deliberately indifferent to his safety as a result of his serious mental health needs.  However, the only allegations in Plaintiff's Complaint with respect to Defendant Britti's involvement in the events that occurred on December 13, 2018 and January 11, 2019 happened after Plaintiff's mental health crises had already concluded.  Specifically, he claims that after the incidents with corrections officers that involved the use of force, she put him on accountability status instead of in a POC cell, but there are no allegations in the Complaint to suggest that at that point in time after those incidents had already occurred there was still an ongoing risk of serious harm to Plaintiff's safety as a result of his mental health that she knew of and deliberately disregarded.

Finally, with respect to the Complaint's allegations against Defendant Britti as it pertains to her involvement in the incident on April 12, 2019, specifically that she refused to put him in a POC cell after he complained that he was feeling suicidal, Plaintiff also fails to state a claim. Plaintiff admits that although she would not put him in a POC cell, Defendant Britti chose instead to order him Lithium.  It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103 (3d. Cir. 1990).  "[A] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." Maynard v. New Jersey, 719 F.Supp. 292, 295 (D.N.J. 1989) (citing Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Although Plaintiff may have preferred instead to go to a POC cell, his preference does not establish a cause of action, and he has not adequately alleged that the course of treatment prescribed by Defendant Britti for his mental illness on that day was a result of deliberate

10

indifference.  As such, Plaintiff has failed to state a claim against Defendant Britti for a violation of the Eighth Amendment.

**D. Amendment**

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint, unless amendment would be inequitable or futile.  *See* Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002).  Based on his current allegations, the Court can imagine no additional facts Plaintiff could plead that would overcome the deficiencies in his Complaint, particularly because it appears that the Complaint was untimely filed.  Accordingly, the Court will not grant Plaintiff leave to amend.

As separate Order will issue.

Dated: October 20, 2023

                                              s/David Stewart Cercone
                                              David Stewart Cercone
                                              Senior United States District Judge

Cc:    Jerome Junior Washington
         HV0282
         SCI Forest
         P.O. Box 945
         286 Woodland Drive
         Marienville, PA  16239